UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| UNIVERSITY OF KENTUCKY | ) | |
| RESEARCH FOUNDATION, INC., | ) | |
| | ) | Civil No.: 13-16-GFVT |
| Plaintiffs, | ) | |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| NIADYNE, INC., | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The University of Kentucky Research Foundation brought suit in state court claiming that Niadyne breached their licensing agreement in failing to sufficiently report sales and pay royalties on products that utilize certain patented niacin molecules possessing cosmetic and medicinal skin repairing properties.  Niadyne, however, has added a wrinkle to what UKRF claims to be a facially simple breach of contract action.  Several months after filing its original answer, Niadyne entered an amended answer that asserted counterclaims for declaratory judgment of noninfringement based on patent exhaustion and patent misuse. [R. 1-2 at 27-29]. Niadyne then removed the case to federal court on the grounds of federal question jurisdiction. [R. 1].  UKRF now moves this Court to remand the case to state court because there is no federal question, removal is untimely, and immunity bars Niadyne's counterclaims.  [R. 6].  The Court, having reviewed the record and considered the motions of the parties, now **GRANTS** the University of Kentucky Research Foundation's Motion and **REMANDS** this case to Franklin Circuit Court.

The University of Kentucky Research Foundation is a non-profit corporation controlled by the University of Kentucky and chartered to promote education and research.  UKRF owns the rights to the so-called Jacobson Patents on certain niacin molecules with skin repairing properties that are used in cosmetic and medicinal creams.  Niadyne is a corporation "involved in the discovery of uniquely efficacious molecules that penetrate the skin to address unmet health care needs."  [R. 1-4 at 6].  On June 10, 1998, UKRF and Niadyne entered into a licensing agreement, wherein UKRF granted Niadyne an exclusive license for the aforementioned molecular technology in exchange for Niadyne's promise to commercially develop and pay royalties on it.  Of particular importance to this claim, Paragraph 4.1 of the agreement stated that the "LICENSEE" shall pay UKRF "a royalty in the amount of two percent (2%) of the Net Sales Price" of products and processes it used, leased, or sold."  [R. 1-4 at 22-23].  Under the agreement, the "LICENSEE" includes Niadyne and any of its affiliates or subsidiaries.  [R. 1-4 at 18].  In addition, the licensing agreement required Niadyne to provide UKRF semi-annual reports of transactions involving the patented molecular technology in order to enable UKRF to conduct an accounting of the royalties due them.  [R. 1-4 at 8-9].

After the parties entered into this licensing agreement and its later amendment, UKRF claims that, through a series of merger transactions, Niadyne became affiliated with StriVectin Operating Company and Catterton Partners.  In the view of UKRF, Niadyne permitted both of these affiliates to use the patented molecular technology in the sale of products and processes without disclosing or paying royalties from their transactions, which violates the license agreement.  Further, UKRF claims that Niadyne engaged in the bulk sale of licensed products to StriVectin using artificially low transfer pricing, resulting in under-reporting of royalties.

Altogether, UKRF claims that Niadyne's breach of the licensing agreement has resulted in over two million dollars in unpaid royalties from the products and processes incorporating the Jacobson Patents.

Not surprisingly, Niadyne characterizes these events differently. According to Niadyne, it "sells patented molecule products in bulk to third-party aggregators who incorporate the patented molecule as an ingredient in a formulation to arrive at the finished skin care products that are sold and delivered to StriVectin by the third-party aggregator." [R. 9 at 1]. In other words, Niadyne claims that it engaged in an arms-length transaction for the sale of bulk molecule products to another company, who then used them to create a product that was purchased and subsequently sold by StriVectin. In Niadyne's view, StriVectin's sale of its skin care products is down stream of Niadyne's initial sale of the bulk molecule products to the third-party aggregator and so no royalty must be paid under the licensing agreement. Thus, Niadyne argues that when it reported to UKRF all authorized sales of molecule products to third-party manufacturers and paid the required royalties on those sales, UKRF's patent and license rights were exhausted, such that it was entitled to no additional accounting or royalties.

On October 31, 2011, general counsel for UKRF sent a letter to Niadyne addressing this difference of opinion. [R. 9-1 at 1-2]. The express purpose of the letter was to "begin a dialogue with Niadyne in connection with the license agreement between UKRF and Niadyne, Inc." [Id. at 1]. The letter went on to specify UKRF's concerns that Niadyne had not been paying royalties to UKRF, as required under the license agreement. The record also contains a second letter from UKRF's outside counsel dated January 6, 2012, which suggests the dialogue had not gone well. [R. 9-1 at 3-4]. The express purpose of this letter was to "demand immediate correction of [Niadyne's] defaults under the License Agreement dated June 10, 1998 between UKRF and

Niadyne." [R. 9-1 at 3]. The letter specified that Niadyne had breached the license agreement by failing to pay royalties and bring to market and exploit the intellectual property rights as required under the agreement. The letter concludes, "[i]f Niadyne fails to take immediate actions to correct its defaults, UKRF will pursue all available rights and remedies under the license agreement and otherwise, including without limitation terminating the License Agreement and filing a legal action for an accounting and damages." [*Id.*]

True to their word, UKRF filed suit in Franklin Circuit Court on June 20, 2012, alleging breach of the license agreement under state contract law. [R. 1-4 at 5]. Niadyne countered with a motion to dismiss, which was denied on November 14, 2012. [R. 1-3 at 1-10]. Subsequently, on November 26, 2012, Niadyne filed its answer to the complaint and the parties commenced discovery pursuant to the scheduling order entered by the state court. [R. 1-3 at 1; R. 1-2 at 52]. On March 1, 2013, Niadyne filed a motion for leave to amend its answer, which UKRF did not contest. [R. 1-2 at 1, 9]. In its amended answer, Niadyne brought, among other things, counterclaims for declaratory judgment of noninfringement based on patent exhaustion and patent misuse. [R. 1-2 at 21-29]. On March 26, 2013, nine (9) months after the original complaint was filed but less than thirty (30) days after the amended answer was filed, Niadyne removed this case to federal court. [R. 1]. UKRF has now countered with the motion to remand that is presently pending. [R. 6].

II

A

UKRF argues that remand is warranted in this case because neither the complaint nor the counterclaim raises a federal question sufficient to support federal jurisdiction, and even if either did, remand would be required because Niadyne's removal was untimely. As these two

arguments are ultimately interrelated, the Court shall consider them jointly.

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994)) (internal quotation marks omitted). Pursuant to 28 U.S.C. § 1331, Congress has opened the doors of the federal courts to "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In addition, Congress has also granted to federal courts statutory original jurisdiction to hear "any civil action arising under any Act of Congress relating to patents." 28 U.S.C. § 1338. When a claim is brought in state court over which a federal court would have original jurisdiction on these grounds, the case may be removed to federal court under 28 U.S.C. § 1441, so long as removal is effectuated in accordance with the procedure outlined in § 1446. 28 U.S.C. § 1441 ("any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.").

In making jurisdictional determinations, the Supreme Court has interpreted the phrase "arising under" in § 1331 and § 1338(a) to have the identical meaning such that the Court's precedents for each may be used interchangeably. *Gunn*, 133 S. Ct. at 1064, (citing *Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 808–809 (1988)). To determine whether a claim "arises under" federal law so as to provide jurisdiction under these statutory provisions, courts employ the "well-pleaded complaint" rule. *Roddy v. Grand Trunk W. R.R. Inc.*, 395 F.3d 318, 322 (6th Cir. 2005) (citing *Loftis v. United Parcel Serv., Inc.,* 342 F.3d 509, 514 (6th Cir. 2003)). Under this rule, "[f]ederal jurisdiction exists only when a federal question is presented

on the face of the plaintiff's properly pleaded complaint." *Id*. at 322 (citing *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). "The well-pleaded complaint rule recognizes that the plaintiff is the master of his complaint. Accordingly, if the plaintiff chooses to bring a state law claim, that claim generally cannot be 'recharacterized' as a federal claim for the purpose of removal." *Id.* (citations omitted).

Niadyne argues that it may remove this case to federal court because federal patent claims are at issue and federal courts have exclusive jurisdiction over such claims. In its motion to remand, UKRF maintains that its claims are for breach of the licensing agreement, and therefore its suit is a general state law breach of contract action that only happens to involve a dispute over patents. Further, UKRF states that Niadyne's counterclaims are not relevant to the jurisdictional analysis. Of course, in reviewing a motion to remand, the defendant bears the burden of showing that removal was proper. *Rogers v. Wal-Mart*, 230 F.3d 868, 871 (6th Cir. 2000). Any doubts regarding federal jurisdiction should be construed in favor of remanding the case to state court. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941); *Walsh v. American Airlines, Inc.*, 264 F. Supp. 514, 515 (E.D. Ky. 1967).

It has long been noted that a case does not automatically "arise under" federal law simply because a patent is implicated in an action. *See Gunn*, 133 S. Ct. at 1068 (2013) (quoting *New Marshall Engine Co. v. Marshall Engine Co.,* 223 U.S. 473, 478 (1912) ("As we recognized a century ago, '[t]he Federal courts have exclusive jurisdiction of all cases arising under the patent laws, but not of all questions in which a patent may be the subject-matter of the controversy.'"). The Sixth Circuit has distinguished "between a patent *claim* which arises under federal statutes relating to patents and which requires the court to interpret the validity and scope of a particular patent within section 1338, and a contract claim in which patent *issues* are merely incidentally

implicated." *Boggild v. Kenner Products, Div. of CPG Products Corp.*, 853 F.2d 465, 468 (6th Cir. 1988) (emphasis in original). In the latter circumstance, "[a] case does not arise under the patent laws merely because questions of patent law may arise in the course of interpreting a contract." *Id*. at 468 (6th Cir. 1988) (*Combs v. Plough, Inc.,* 681 F.2d 469, 470 (6th Cir.1982) (per curiam)).

UKRF's complaint goes to some lengths to carefully frame its complaint in terms of claims for breach of contract rather than for patent infringement. Starting from the face of the complaint, all four counts are labeled as "Breach of License Agreement." [R. 1-4 at 12-13]. Substantively, in these counts, UKRF is alleging that Niadyne has breached the license agreement for: (1) failing to pay all the royalties as required by Paragraph 4.1; (2) failing to provide true and accurate reports pertinent to a royalty accounting as required under Paragraph 5.2; and (3) failing to use due diligence to develop and market products incorporating the molecular technology as required under Paragraph 8.4. [*Id*.] UKRF also included a contractual indemnity claim pursuant to Section 10.01 of the license agreement. [R. 1-4 at 13-14]. Notably, each of these claims are tied to violations of particular provisions of the license agreement. Also, the underlying issue of each of these claims, as extrapolated from the facts of the complaint and characterized by UKRF in its Reply, is whether StriVectin and Catterton Partners are affiliates for the purposes of the license agreement, such that Niadyne was required to pay royalties and give an accounting for their transactions involving the patented molecular technology. Thus, while patents are certainly involved in these claims, the action stated by UKRF in its complaint is actually one for breach of contract, which arises under and would be resolved according to state contract law rather than federal patent law.

Niadyne does not seem to fully dispute this analysis, conceding, "UKRF is correct in

stating that Niadyne has not claimed that UKRF asserted a claim of patent infringement against Niadyne in the original complaint, although UKRF's factual allegations…clearly implicate the patent laws." [R. 9 at 6]. Instead, Niadyne's primary argument is that it has essentially created federal jurisdiction by asserting counterclaims for a declaratory judgment that it did not infringe on UKRF's patent rights. Specifically, Niadyne seeks a court determination to verify its belief that when it made payments on the transactions with third-party aggregators, it exhausted UKRF's patent and license rights, and UKRF's demands for further royalties constitute an exploitation of the Jacobson Patents in a manner that violates patent laws. These counterclaims, Niadyne maintains, do arise under federal patent law and give this Court jurisdiction.

Until quite recently, such an argument would not have been available to Niadyne. It was long settled that, "a case is not within our 'arising under' jurisdiction if the assertion of noninfringement is merely a defense to a state contract action brought by a licensor to enforce a license agreement." *Cordis Corp. v. Medtronic, Inc.*, 835 F.2d 859, 862 (Fed. Cir. 1987) (citing *C.R. Bard, Inc. v. Schwartz,* 716 F.2d 874, 879 (Fed.Cir. 1983)). The Supreme Court expressly extended that rule to the context of a counterclaim. In *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, which is somewhat factually similar to this case, the defendant argued "that the well-pleaded-complaint rule, properly understood, allows a counterclaim to serve as the basis for a district court's 'arising under' jurisdiction." 535 U.S. 826, 830 (2002). The Supreme Court disagreed. Justice Scalia, writing for a majority of the Court, recognized that under the well-pleaded complaint rule, "whether a case arises under federal patent law cannot depend upon the answer." *Id*. at 831 (citing *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25 (1913)) (internal quotation marks omitted). In the Court's view, if a case could become removable upon the strength of a counterclaim, the plaintiff would no longer be the master of the complaint and

the removal jurisdiction of the federal judiciary would be radically expanded. Thus, the Supreme Court held that a "counterclaim-which appears as part of the defendant's answer, not as part of the plaintiff's complaint-cannot serve as the basis for 'arising under' jurisdiction. *Id.* As a result, district courts have traditionally remanded cases where the basis for federal question jurisdiction was, like Niadyne's, found only in the declaratory judgment counterclaim. *See, e.g., Green Edge Enterprises, L.L.C. v. Int'l Mulch Co., Inc.*, No. 4:09 CV 120 DDN, 2009 WL 882090 (E.D. Mo. Mar. 30, 2009).

However, in 2011, Congress passed the Leahy-Smith America Invents Act, which included "the so-called *Holmes Group* fix," that had the effect of abrogating *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.* by allowing counterclaims arising under federal patent law to provide grounds for federal removal jurisdiction. Joe Matal, *A Guide to the Legislative History of the America Invents Act: Part II of II*, 21 Fed. Circuit B.J. 539 (2012) (citing H.R. No. 112-98, at 81 (2011); Leahy-Smith American Invents Act, sec. 19, 125 Stat. at 332; 157 Cong. Rec. S1378 (daily ed. Mar. 8, 2011) (statement of Senator Kyl)). Specific to this case, the Act created 28 U.S.C. § 1454, which provides in relevant part that, "[a] civil action in which *any party* asserts a claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights may be removed to the district court of the United States for the district and division embracing the place where the action is pending." 28 U.S.C. § 1454(a) (emphasis added). Though less than a handful of courts have had occasion to consider Section 1454, and none on this particular issue, the text, legislative history, and scholarship agree that this statute modifies federal court jurisdiction so that intellectual property counterclaims arising under federal law will not be remanded simply because they are counterclaims. In other words, by enacting Section 1454, Congress has broadened federal court removal jurisdiction to better

ensure that whenever claims arise under federal patent law, they are removable, irrespective of who asserted them. Thus, Niadyne's counterclaim for declaratory judgment may serve as the basis for federal removal jurisdiction so long as it arises under federal patent law.

The task of discerning whether Niadyne's counterclaims arise under federal law is complicated by the fact that they are counterclaims for declaratory judgment. In determining whether a claim for declaratory judgment arises under federal law, courts have adapted the well-pleaded complaint rule to more appropriately apply to the declaratory judgment context. The Sixth Circuit has characterized this modified rule as follows:

> In determining whether there is federal subject matter jurisdiction for declaratory judgment actions: It is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. In other words, the court examines the declaratory *defendant's* hypothetical well-pleaded complaint to determine if subject matter jurisdiction exists.

*ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1349 (Fed. Cir. 2011) (citing *Pub. Serv. Comm'n of Utah v. Wycoff Co.,* 344 U.S. 237, 248 (1952); *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. California,* 463 U.S.1, 16-19 (1983); *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–72 (1950)); *see also Speedco, Inc. v. Estes,* 853 F.2d 909, 912 (Fed.Cir. 1988) (applying, under *Skelly Oil,* "the well-pleaded complaint rule not to the declaratory judgment complaint, but to the action that the declaratory defendant would have brought")).

In evaluating Niadyne's declaratory judgment counterclaim under this rule, the relevant focus is not on Niadyne's claim for declaratory judgment, but on the hypothetical complaint expressing the threatened action that UKRF (the declaratory defendant) would have brought against Niadyne (the declaratory judgment plaintiff). Niadyne seeks a declaration that it did not infringe on UKRF's patent rights. Niadyne claims that such a declaration is necessary because

10

UKRF has demonstrated assertiveness in attempting to enforce its alleged patent rights. Specifically, Niadyne references threatening actions taken by UKRF, including two letters in which "UKRF asserted its rights and threatened termination as a prelude to this litigation." [R. 9 at 7 (citing the letters attached as exhibits at R. 9-1)]. Further, once UKRF initiated the litigation, Niadyne interpreted the facts of the complaint to state, "in essence that such finished product sales by Niadyne's bulk product customers are infringement of UKRF's patent rights." [R. 9 at 3]. Based on these facts, Niadyne argues the hypothetical coercive complaint that UKRF would have asserted and which prompted Niadyne's claim for declaratory judgment, would be for patent infringement. Were Niadyne correct, "[i]t is well-established that a claim for infringement arises under federal law." *ABB Inc.*, 635 F.3d at 1350 (Fed. Cir. 2011).

Though UKRF forcefully responds that the declaratory judgment counterclaims do not arise under federal law and that they do not constitute an actual controversy involving infringement,[1] the Court need not wander any further into that particular legal morass. Niadyne has set forth the facts that it believes raises a federal question and makes this case removable. Even assuming Niadyne is correct, as shall be explained, the fact that Niadyne had actual notice of this information more than thirty days prior to its removal, requires remand anyway.

It is not enough to simply arrive at federal court with a federal claim – a removing party must also be on time. Setting forth the procedural rules governing remand, 28 U.S.C §1446(b) states in part that, "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based…." 28 U.S.C. § 1446(b)(1). However, "if the case stated by the initial pleading is not removable, a

---

[1] UKRF cites *ABB Inc.,* 635 F.3d 1345 and *Speedco, Inc.,* 853 F.2d at 913 for the proposition that courts may refuse jurisdiction over a declaratory judgment claim for patent infringement upon a finding that there is no actual controversy surrounding infringement, and the dispute is really about contract interpretation.

notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, a copy of an amended pleading, motion, order, or some other paper from which it may first be ascertained that the case is one which is or has become removable." § 1446(b)(3).

Thus, the threshold question for the Court is when did the thirty-day removal clock begin to begin to run?  In exploring the answer to that question in the unpublished yet oft-cited case of *Holston v. Carolina Freight Carrier Corporation*, the Sixth Circuit stated:

> We hold that § 1446(b) starts the thirty-day period running from the date that a defendant has solid and unambiguous information that the case is removable, even if that information is solely within its own possession.

936 F.2d 573, 1991 WL 112809 at *3 (6th Cir. 1991) (table).  In reaching that conclusion, the court made clear that it is the defendant's "notice of facts that lead to a possibility of removal" that triggers the beginning of the thirty-day countdown, rather than the defendant's receipt of a statement containing information about removability from another source, such as the plaintiff or the court.  *Id*.

Districts courts, guided at least in part by this rule, have decided several cases that are instructive to the present dispute.  In *Nobles v. George T. Underhill & Associates*, the defendant failed to remove a state law action to federal court, though a pending bankruptcy proceeding would have given it the grounds to do so.  No. 3:09-CV-225-S, 2010 WL 1542516 (W.D. Ky. Apr. 16, 2010).  The defendant argued that, though he had known about the bankruptcy suit at the time the state law action was filed, because the complaint was silent on that matter, the thirty days did not begin to run until the bankruptcy proceeding was mentioned in the plaintiff's deposition.  Having discussed *Holston*, the court disagreed stating, "[t]he defense had prior knowledge of the bankruptcy action, and knew (or should have known) that the case was removable. Certainly the fact of removability was 'intelligently ascertainable' at the time the

complaint was filed." *Id*. at *3 (quoting 14C Charles Allen Wright et al., Federal Practice and Procedure § 3731, at 562-67 (4th ed. 2009)). The court went on to note that, "[t]o allow a defendant to dither for years on end waiting for discovery to finally 'reveal' a fact that it already knew would seriously undercut the interests in comity and efficiency that are the reason for having a time limit for removal in the first place." *Id*.

In *Campbell v. EPI Healthcare*, a court in this district applied the guidance of *Holston* to a similar factual situation. No. 08-401-ART, 2009 WL 395498 (E.D. Ky. Feb. 18, 2009). The defendant in that case was a state agency which, because it had undertaken certain tasks, qualified as an agent of the federal government. Though this fact and the circumstances of the case created removal jurisdiction under § 1442, the defendant did not initially remove the action. During the course of discovery, a dispute arose in which the state court ordered the defendant to turn over certain documents, which federal regulation did not permit the defendant to do. The defendant argued that removal was not appropriate until after the court ruled in favor of compelling discovery because only then did the need arise to assert the defense provided under federal regulations. The district court disagreed, finding that the relevant trigger for the statutory clock was not the ruling of the state court, but when the defendant knew that the case could be removed. *Id*. at *3. ("In other words, this dispute was ripe the minute KCHFS knew it was acting as a federal agency when performing the survey, and, in turn, was going to decline to turn over the survey under federal regulations and law—October 15, 2008. At that point, it could arguably assert a 'colorable federal defense' under the regulations."). Thus, despite the federal issue that was present in the case, the court remanded the case to state court due to untimely removal.

Perhaps the most factually similar case to the somewhat unique circumstances at hand is

*Tabor v. Willey*, No. 01-1002 MJM, 2001 WL 34152085 (N.D. Iowa May 3, 2001). In *Tabor*, the plaintiff filed a state court complaint for liable, which the defendant moved to dismiss. Months after the defendant lost on this motion, he amended his answer to assert immunity as a federal defense and subsequently removed the case to federal court. The court, in considering the plaintiff's motion to remand, assumed for the purposes of the opinion that the defendant had sufficiently asserted a basis for federal removal jurisdiction and dealt with whether the removal was timely filed. The defendant asked the court to find that the thirty day clock under Section 1446 began to run upon the granting of the amended answer because that was the first order whereby it could be ascertained that the case had become removable. The court rejected this argument finding that the defendant's "request to amend his answer was not in response to any facts unascertainable at the time of his initial answer." *Id*. at *3. Referencing *Holston*, the court found that the defendant had solid and unambiguous information that the case was removable at time of the filing of the initial pleading, and "[i]f the case is removable now, it was removable then." *Id*. Thus, the court started the clock at the time of the filing of the original pleading and remanded the case back to state court on the basis of untimely removal.

Turning to the instant matter, Niadyne claims that this case became removable after the state court granted its motion to amend the answer, in which Niadyne first asserted its federal claim. However, it is not the state of the record or the actions of the court that are the relevant focus of the Section 1446(b) analysis, but the actual knowledge of Niadyne. The thirty-day clock began to run when Niadyne attained "solid and unambiguous information" that the case was removable – that is to say, when Niadyne had solid and unambiguous information that it could assert a claim for declaratory judgment on the federal issue of patent noninfringement. *See Holston*, 936 F.2d 573, 1991 WL 112809 at *3. As previously discussed, Niadyne's own brief

expressly reveals that it had such knowledge long before it moved to amend its answer. Specifically, in showing that UKRF had demonstrated sufficient "assertiveness" to support a declaratory judgment action, Niadyne states as follows:

> In this case UKRF's complaint is relevant to demonstrate its assertiveness in bringing litigation to enforce its rights under the patent license agreement and threatening termination of Niadyne's rights. In addition, the factual allegations contained in UKRF's complaint are also relevant to show that it is attempting to enforce it rights so as to impermissibly extract a second royalty from Niadyne. UKRF's conduct clearly establishes its "assertiveness," whether or not expressly pled in the context of a patent infringement claim. In addition, by way of letters dated October 31, 2011, and January 6, 2012, UKRF asserted its rights and threatened termination as a prelude to the instant litigation. See Exhibit 1. Such acts, coupled with UKRF's demand letters and separate threats of termination, support this Court's subject matter jurisdiction over Niadyne's declaratory judgment counterclaim.

[R. 9 at 7].

If these facts constitute sufficient grounds for the declaratory judgment counterclaims (which Niadyne argues and the Court has assumed), and Niadyne had solid and unambiguous notice of this information at the time of the filing of the complaint (which is clear from Niadyne's own brief), then the thirty-day removal clock began to run on June 26, 2012, the date Niadyne received the complaint. Niadyne has set forth no new information that came to light between this date and the time in which it moved to amend its complaint that would make the case any more removable. Thus, the procedural clock began to run upon Niadyne's receipt of the complaint, and the window for removal expired thirty days later. Because Niadyne did not remove the case for nearly nine months after it had solid and unambiguous information that the case was removable, it is now time barred from doing so under the procedural requirements of Section 1446.

Despite this result, Niadyne argues that it may still remain in federal court under the timing exceptions provided under Section 1454. In general, removal of patent cases under

Section 1454 is to be done in "accordance with section 1446;" however, the statute provides for two "special rules." 28 U.S.C. § 1454(b). First, under Section 1454, removal may be effectuated by either party. 28 U.S.C. § 1454(b)(1). Second, and relevant to this portion of the analysis, "the time limitations contained in section 1446(b) may be extended at any time for cause shown." 28 U.S.C. § 1454(b)(2). Thus, in applying the timing rules of Section 1454, courts must first assess timeliness under Section 1446, and then, if that procedure is violated, determine whether the removing party has shown cause to justify this delay. Niadyne argues that even if it is too late under Section 1446, in amending its answer to include counterclaims for declaratory judgment of patent noninfringement, over which this court has exclusive jurisdiction, it essentially created cause for extending the time for removal under Section 1454.

Niadyne's argument is supported neither by the language of the statute nor basic logic. "Cause shown" cannot, as Niadyne suggests, simply be that the removing party has asserted a patent claim and federal courts are the exclusive forums of such claims. The reason for this seems obvious. Section 1454 is principally about the removal of patent claims, and so if Congress had shared Niadyne's view, it would have simply removed all time limitations. Since it did not, Niadyne's argument on this point cannot be accepted because it is inconsistent with the statute. Further, that Niadyne has a federal patent claim in its amended answer only justifies removal under the statute, and does not account for the delay in effectuating that removal. In rejecting a similar argument, two of the few courts to have construed this provision of Section 1454 have stated, "[w]hile Defendants' explanation certainly demonstrates to the Court *how* the Defendants *could have* timely filed, it does not demonstrate to the Court *why* these individual Defendants *did not* timely file. *SnoWizard, Inc. v. Andrews*, No. 12-2796, 2013 WL 3728410 at *5 (E.D. La. July 12, 2013) (quoting *Benesmart, Inc. v. Total Financial Group, LLC*, No. 12–

2645, 2012 WL 6020340 (E.D. La. Dec. 3.2012)).  Niadyne expressed the reason it did not

timely file its counterclaim, not in its notice of removal, but in its motion to the state court for

leave to amend its answer.  Therein, Niadyne admitted that, "the failure to file the proposed

counterclaims in the original Answer was caused by oversight, inadvertence, or excusable

neglect."  [R. 1-2 at 10].  Though the statute does not appear to create an incredibly high bar for

an extension, "at a minimum the standard imposes some burden on the removing party to justify

why its tardiness should be excused."  *SnoWizard*, 2013 WL 3728410 at *6.  As Niadyne's

excuse for delay does not constitute cause even under this standard, it may not benefit from the

special time extending rules of Section 1454.

Niadyne should not consider its important patent claims as having been unceremoniously

swept out of federal court over a harmless foul or on a technicality.  There are enduring and

important policy considerations that undergird the procedural rules that fatally wounded

Niadyne's removal attempt.  As an initial matter, allowing a case to be litigated for an extensive

period of time in state court only to permit removal very late in the day unnecessarily

transgresses the important notions of conservation of resources and judicial economy.  Further,

because the removal statutes govern the movement of a case between state and federal courts,

strict enforcement has always been necessary to safeguard the notions of comity and federalism.

*Shamrock Gas & Oil Corp.* at 108-09; *Bragg v. Kentucky RSA # 9-10, Inc.*, 126 F. Supp.2d 448,

450 (E.D. Ky. 2001)

Finally, and perhaps most relevant to this case, courts must not allow removing parties to

forge statutes like Section 1454 into a jurisdictional sword, with which they may gain a tactical

advantage over their adversary.  For example, here Niadyne seemed satisfied to litigate its claims

in state court until it lost its motion to dismiss.  Thereafter, it sought to amend and remove the

case to federal court, perhaps to try its hand there.  The timing provisions of Sections 1446 and

1454 are important because they limit the ability of the Defendant to test the waters in one forum

and, finding them inhospitable, move to another forum that might be more sympathetic to its

views.  *See Tabor v. Willey*, C01-1002 MJM, 2001 WL 34152085 at *4 (N.D. Iowa May 3,

2001) (quoting *Wilson v. Intercollegiate (Big Ten) Conference Athletic Assoc.,* 668 F.2d 962, 965

(7th Cir. 1982) ("The purpose of the 30–day limitation is twofold: to deprive the defendant of the

undeserved tactical advantage that he would have if he could wait and see how he was faring in

state court before deciding whether to remove the case to another court system; and to prevent

the delay and waste of resources involved in starting a case over in a second court after

significant proceedings, extending over months or even years, may have taken place in the first

court.").  Whether or not this was the specific motivation of Niadyne, such abuse of the

jurisdictional rules are another justification for insisting on strict adherence to the timing

procedures of removal.

These policy concerns do not vanish simply because a patent claim is implicated.  It is

unquestionably clear from its statutes that Congress intends patent claims to find their way to

federal court.  However, there can also be no doubt that where such claims are not removed in

accordance with the proper procedure, the federal courthouse doors are closed to them.  Section

1454 provides any party the power to remove patent claims, but expressly states that those claims

must "arise under" federal law and must be brought in accordance with the timing provisions of

Section 1446 unless excused by cause shown.  Niadyne has asserted a counterclaim for

declaratory judgment of patent noninfringement, which it claims arises under federal patent law.

However, even if it does, Niadyne knew that its counterclaim could have been asserted – thereby

making the case removable to federal court – at the time of UKRF's initial pleading.  Thirty days

passed without Niadyne effectuating removal, and now, with Niadyne having shown no cause justifying its delay, its belated removal is improper. This court is, as a result, rendered without jurisdiction to decide the instant dispute. *See* 28 U.S.C. § 1447(c); *Page v. City of Southfield*, 45 F.3d 128, 131-132 (6th Cir. 1995) (citations omitted); *Holston*, 936 F.2d 573, 1991 WL 112809 at *2 (citing *United States ex rel. Walker v. Gunn,* 511 F.2d 1024 (9th Cir. 1975)). Therefore, UKRF's motion shall be granted, and the case remanded to the Franklin Circuit Court.

B

Before remanding this case to state court, the Court must address two additional matters raised by the parties. In its motion to remand, UKRF requests this Court to not only send the case back to state court, but to also order Niadyne to pay attorney's fees and costs due to improper removal. A party may be sanctioned for its removal under 28 U.S.C. 1447(c), which states, "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C.A. § 1447. However, a district court "may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141 (2005). This is decisively not the case here. This case has not only involved the difficult issues of patent jurisdiction, but also implicated the interpretation of a relatively new statute, Section 1454, that has only been considered by a handful of courts, none of which are situated in this circuit. Thus, it cannot be said that Niadyne had no objectively reasonable basis for seeking removal, and UKRF's request for attorney's fees and costs will be denied.

Finally, the parties have disputed whether UKRF's counterclaims are barred by the Eleventh Amendment. Their contentions on this point prompted a subsequent round of briefing

as to whether UKRF's reply raised new arguments, which Niadyne has moved to strike.  The Court does not reach this issue and shall deny Niadyne's motion to strike as moot.  Once again, to be clear, this Opinion addresses whether Niadyne's counterclaims allow this Court to assume federal removal jurisdiction.  Finding that, for procedural reasons, it does not, the Court simply does not have the power to address the general viability of Niadyne's counterclaims for declaratory judgment of patent noninfringment.

III

Accordingly, and for the reasons articulated above, it is hereby **ORDERED** as follows:

(1)     The University of Kentucky Research Foundation's Motion to Remand [R. 6] is **GRANTED**;

(2)     Niadyne's Motion Requesting Leave to File Surreply or Alternatively Strike Plaintiff/Counterclaim Defendant's Reply Memorandum in Support of Motion to Remand [R. 13] is **DENIED**, as moot;

(3)     The University of Kentucky's Research Foundation's request for attorney's fees and costs is **DENIED**; and

(4)     This case is **REMANDED** to the Franklin Circuit Court and **STRICKEN** from the Court's active docket.

This 5th Day of November, 2013.



**Signed By:**

*Gregory F. Van Tatenhove*

**United States District Judge**